# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CORIANN G. ALLEN,**

           **Plaintiff,**

**-vs-**                                                      **Case No. 6:05-cv-512-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

           **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's application for Social Security benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

### *PROCEDURAL HISTORY*

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on December 3, 2002 (R. 50-53). The applications were denied initially and upon reconsideration (R. 23-28, 33-35). Plaintiff requested and received a hearing before an Administrative Law Judge (herein "the ALJ") (R. 36, 544), and on December 20, 2004, the ALJ issued an unfavorable decision (R. 11-22). The Appeals Council denied Plaintiff's Request for Review on February 10, 2005 (R. 6), making the decision of the ALJ the final decision of the Commissioner. This action timely followed.

### *NATURE OF DISABILITY CLAIM*

Plaintiff asserts that she became disabled on December 2, 2002, due to diabetes, fibromyalgia, carpal tunnel syndrome, depression, and migraines (R. 15, 98).

*Summary of Evidence Before the ALJ*

Plaintiff was thirty-one years old at the time of the ALJ's decision, with a high school education and one year of college (R. 51, 550). She has past relevant work as a tax clerk/revenue specialist, school nurse assistant, nursing home worker, fast food counter-person, sales clerk and cashier/bagger (R. 99, 551-53). In February 2004, six months prior to the administrative hearing, Plaintiff began working twenty hours per week, four hours per day, as a library assistant/computer reservationist (R. 554, 557).

The medical record is fairly voluminous and is summarized in the ALJ's decision. By way of summary, the relevant medical records[1] indicate that Plaintiff began treating with James Hull, D.O., in October 1999, for complaints of headaches, diabetes, shoulder pain and back pain (R. 380-418). In June 2001, Plaintiff was involved in an automobile accident, and presented to Dr. Hull complaining of headaches, shoulder pain and feet swelling (R. 402). She reported that her diabetes was doing well, but she had low back spasms. On follow up visit a week later, Plaintiff was still having pain, and Dr. Hull noted that she had run out of money and would have to go back to work (R. 399). Her diabetes was noted to be "not well controlled."

On August 9, 2001, Plaintiff returned to Dr. Hull, complaining of fatigue and chest pain (R. 397). Dr. Hull noted: "I gave her a complete physical examination today and found absolutely no reason for it, other than the fatigue syndrome and the fact that she has deteriorated some." *Id.*

On August 31, 2001, Plaintiff complained to Dr. Hull of an intractable migraine, and injections were tried (R. 395). On return visit on September 6, 2001, C-spine and lumbar x-rays were taken, with no acute pathology noted, and no arthritic changes seen (R. 392). It was noted that Plaintiff was 28 years old and 274 pounds and "she would see improvement of her lower lumbar pain with weight

---

[1]As noted by Plaintiff in her brief, only those medical records that pertain to the Plaintiff's condition on or after the alleged onset date are relevant (*See* Plaintiff's brief at 2, footnote 1).

loss." (R. 392). On follow up visit, Plaintiff noted improvement of her headache on Imitrex (R. 389).

Alyn Benezette, D.O., saw Plaintiff, on Dr. Hull's referral, on November 7, 2001 (R. 223-226). On examination, Plaintiff exhibited some tenderness, but she had negative straight leg raising test, sitting root test, and Spurling's test. She had full extension, and 20 degrees of flexion. Left and right lateral rotation was limited to 60 degrees (R. 224). Both upper and lower extremities had motor strength measurements of 5/5 (R. 225). Sensation was intact, reflexes and gait had no abnormalities noted. Impression was cephalgia, cervical strain, lumbosacral strain and possible lumbar radiculopathy, and MRI studies were ordered.

On December 4, 2001, Plaintiff returned to Dr. Hull, who noted that the MRI studies of the brain and lumbar spine were normal (R. 385). Dr. Hull opined that Plaintiff's problem "was just secondary to muscle spasm and her weight." On return visit to Dr. Benezette, physical therapy was prescribed (R. 221). Dr. Hull prescribed physical activity such as walking, as well (R. 383). On April 8, 2002, Plaintiff presented to Dr. Hull with elevated blood sugars, and reported that she had not been exercising, as directed (R. 380). It was noted that she admitted to difficulty with compliance, secondary to her schedule. On return visit May 6, 2002, Dr. Hull again noted that her sugar was very high and that Plaintiff definitely needed to "watch her diet," but was not doing so (R. 378).

On May 14, 2002, Dr. Benezette opined that Plaintiff had reached maximum medical improvement regarding her June accident, and restricted Plaintiff to "light activities." (R. 219). Specifically, Plaintiff was told she should not lift or carry objects greater than 20 pounds except occasionally; should not stand or walk for more than 15 minutes without being allowed to change positions; and sitting was restricted to 30 minutes at a time. Plaintiff could stoop, squat or bend only occasionally. Dr. Benezette gave Plaintiff a 6% permanent impairment rating. *Id.*

Plaintiff presented to Dr. Hull on June 3, 2002, complaining of fluid retention and generalized aches and pains and polyarthralgia (R. 376). The impression was severe depression, polyarthralgia, fibromyalgia, anxiety, uncontrolled pain and uncontrolled diabetes mellitus.

Plaintiff continued to treat with Dr. Hull throughout the summer of 2002, and on September 2, 2002, she complained of numbness in her fingers (R. 370). On examination, Plaintiff had a positive Phalen's sign and a positive Tinels. Assessment was bilateral carpal tunnel syndrome, and Plaintiff was given braces to wear "at night only for now." *Id.* On return visit in October, Plaintiff complained of pain in both wrists (R. 368).

Plaintiff presented to Dr. Benezette again on November 7, 2002 (R. 216). Assessment was cervical/lumbar strain. She was prescribed a muscle relaxant to reduce spasm and pain and improve function, and her restrictions remained unchanged (R. 216-7).

An EMG/Nerve Conduction Study was performed on December 11, 2002 (R. 214-5). The abnormal study was indicative of the following: C7 radiculopathy of the left upper extremity with active denervative changes; sensorimotor neuropathy of the median nerve at or distal to the elbow in the left greater than right upper extremity, consistent with bilateral carpal tunnel syndrome and mild ulnarsensory neuropathy at or distal to the wrist in the left greater than right upper extremities.

On December 18, 2002, Ramin D. Bonnet, D.O., wrote a letter to the Social Security Administration, stating that he had been treating "this patient" for several different medical problems and in his professional opinion, this patient cannot work due to morbid obesity, diabetes, carpal tunnel syndrome and fibromyalgia (R. 360). Curiously, Plaintiff's name does not appear on the letter, and there are no records of Plaintiff presenting to this physician for treatment.

On December 19, 2002, Plaintiff returned to Dr. Benezette, stating that the muscle spasm had improved, but she still had neck and low back pain and numbness and tingling of the hands and feet (R. 212). Impression was cervical radiculopathy/strain, lumbar strain and carpal tunnel syndrome.

On January 24, 2003, Plaintiff returned to Dr. Hull for a refill of her medications, and inquired as to whether her insurance would pay for a gastric bypass surgery (R. 359). On examination, no abnormalities were noted. The lumbar examination had no vertebral point tenderness; flexion/extension were within normal limits, range of motion at point of rotation was within normal limits and there was no evidence of polar area spasm. Assessment was obesity.

On January 29, 2003, Plaintiff returned to Dr. Benezette with left sided neck pain that radiated into the left upper extremity. A cervical MRI was recommended (R. 211).

On February 11, 2003, Plaintiff was seen by J. Jeff Oatley, Ph.D. for a psychological evaluation (R. 180-183). On examination, her mood and affect appeared appropriate, her speech was coherent with no concentration problems noted. She was oriented, and no memory defects were identified. Plaintiff reported her activities of daily living included shopping, taking her two year old daughter to therapy several times a week, preparing meals, driving, and doing most household chores, including laundry, although she noted that her pain is exacerbated if she stands or sits too long. She watches TV and has a friend visit regularly. Diagnoses were diabetes, per physician report, depressive disorder, NOS, well controlled with medication, obesity, carpal tunnel, and unspecified complaints of pain and low back and hip problems. (R. 180- 83).

An MRI of the cervical spine dated February 19, 2003 revealed straightening of the cervical spine suggesting underlying musculoligamentous strain. There was no evidence of fracture or dislocation, no evidence of soft tissue swelling, and no significant disc disease (R. 209-10).

On February 21, 2003, a state agency non-examining psychologist completed a psychiatric review technique form, finding Plaintiff's mental impairment to be non-severe (R. 183-196). On March 18, 2003, a state agency non-examining physician found Plaintiff to have the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; stand at least 2 hours and sit for about 6 hours in an 8 hour workday, with unlimited ability to push and or pull (R. 199-206).

On March 27, 2003, Dr. Benezette evaluated Plaintiff in follow-up visit (R. 207-8). Impression remained as cervical radiculopathy/strain and lumbar strain. There was no change in her symptoms, and the doctor felt Plaintiff continued to have a 6% permanent impairment and was restricted to light activities.

Dr. Hull evaluated Plaintiff on April 14, 2003 (R. 353). She reported being involved in a motor vehicle accident on January 16, 2001, and complained of pain to the neck and lumbar area with severe muscle spasms, and tingling in her arms and fingers, with bilateral carpal tunnel syndrome. The impression was post traumatic syndrome and pain from being hit from behind while stopped.

On May 7, 2003, Plaintiff presented to the emergency department of the hospital with a migraine headache (R. 244-45). She denied any numbness or tingling in her extremities, denied neck pain, and on examination, her strength was 5/5 in all extremities.

On June 10, 2003, Plaintiff was seen at Memorial Hospital with complaints of chest pain (R. 341, 343). She reported that she had not taken her insulin that morning. She was treated and released (R. 347). Three days later, she was in Dr. Hull's office, complaining of pain, and with high sugars (R. 349).

On July 11, 2003, a non-examining state agency physician completed a residual functional capacity assessment, which mirrored the earlier assessment, except for a finding that Plaintiff could only occasionally climb, balance, kneel, crouch or crawl; and was limited to occasional overhead

reaching and feeling (R. 419-426). On July 24, 2003, a state agency psychologist found Plaintiff's mental impairment to be non-severe (R. 427).

On September 8, 2003, Plaintiff presented to Halifax Medical Center with complaints of a migraine headache. She was given pain medication, and released (R. 476-77).

Plaintiff was seen at Atlantic Urgent Care on September 18, 2003, with complaints of facial pain, and "she is here requesting pain medication." (R. 473-74).

Plaintiff presented to Dr. Teresa Fagan on April 22, 2004, when she switched health plans (R. 479). She "had no particular complaints today," save for noting her diabetes, and examination was unremarkable.

On June 8, 2004, Plaintiff was seen at Halifax Medical Center with complaints of neck pain after being involved in a motor vehicle accident (R. 444-45). X-rays of the C-spine were negative. The assessment was cervical strain and migraine, and Plaintiff was discharged.

An MRI of the cervical spine dated June 16, 2004, was identical to the prior MRI, and revealed straightening of the cervical spine suggestive of underlying musculoligamentous strain (R. 465-66). The MRI of the lumbar spine was unremarkable (R. 463-64).

On June 23, 2004, Plaintiff underwent an ultrasound examination of the cervical and lumbar spine, as well as view of the trapezius muscles and sacroiliac joint, bilaterally (R. 457). The only abnormal finding was facet areas inflammation of a mild degree at C4, C6. *Id.*

On June 28, 2004, Plaintiff was seen by Dr. Benezette. Impression was cervical/thoracic/lumbar myositis. Plaintiff underwent left cervical/thoracic myofascial trigger point injections, and was sent to physical therapy. (R. 452).

An electrodiagnostic report dated July 12, 2004 revealed C5-C6 radiculopathy in the left upper extremity, and L4, S1 radiculopathy in the left upper extremity (R. 480, 485- 86).[2]

On July 13, 2004, Dr. Benezette evaluated Plaintiff (R. 483-4). Plaintiff noted that she did not want to stop working at her job as a librarian, as she needed the income. Impression remained cervical/thoracic/lumbar myositis. She underwent left trigger point injections, and physical therapy.

On August 20, 2004, Plaintiff underwent bilateral suboccipital/cervical myofascial trigger point injections (R. 531- 32).

On September 20, 2004, Plaintiff was seen again by Dr. Benezette (R. 528-29). She was still having significant left sided neck and back pain with associated spasms and restriction of motion that affect the function in her left upper extremity and lower extremities. It was noted that she was unable to obtain medications until her Medicaid insurance was reinstated. Plaintiff was encouraged to continue physical therapy, and was restricted to sedentary activities pending follow-up in six weeks. (R. 529).

On September 27, 2004, Plaintiff was seen at Halifax Medical Center with complaints of headache, with nausea and left-sided numbness (R. 520-21). An MRI of the brain was unremarkable (R. 523-24).

On November 3, 2004, Plaintiff returned to Dr. Benezette, noting that she was having more difficulty writing and using utensils due to her discomfort and sensory impairment of the left wrist and hand. She was finding it more and more difficult to perform her usual occupation as a library assistant. Dr. Benezette stated the following: "[T]he patient is restricted to very sedentary activities. I do not feel that she can continue working at her present occupation as a library assistant and should not lift or carry objects greater than 5 pounds on more than an occasional basis. She should not stoop, squat,

---

[2]Compare with R. 483, which refers to a finding of L4, S1 radiculopathy of the left *lower* extremity.

-8-

bend, reach, push, pull, crawl or climb." (R. 526-27). Dr. Benezette attributed these restrictions to Plaintiff's June 2004 accident, and assessed Plaintiff with a 4% permanent impairment to the body as a whole.

At her hearing, Plaintiff testified as to her condition and limitations. She stated that she was presently working as a library assistant (R. 554). She worked 20 hours a week, four hours a day, and in a six month period, she missed two days at work, due to not feeling well (R. 555). Plaintiff testified that she had frequent migraine headaches, as well as pain in her neck and fibromyalgia pain. She stated that she could sit or stand at most for 15 minutes at a time, and could lift five pounds without pain (R. 563). She felt that she could walk for 10 minutes. Plaintiff opined that because of her diabetes, she could not work full time, as she would get tired and fatigued (R. 557).

A vocational expert ("VE") testified at hearing, as well. The VE testified that Plaintiff's prior relevant work as a tax clerk was a sedentary position (R. 574). Her current work as a library assistant was considered light work (R. 575-76). The VE noted that the positions of library assistant and tax clerk both required reaching, handling and fingering on a frequent basis.

The ALJ issued a determination finding that Plaintiff suffered from the severe impairments of diabetes mellitus and cervical/lumbar strain (R. 18). Plaintiff was found to have the residual functional capacity to stand and walk two hours and sit six hours in an eight-hour workday, and lift ten pounds (R. 20). Based on this capacity, and noting Plaintiff's current level of activity, Plaintiff was found able to return to her past relevant work as a revenue specialist/tax clerk, and was therefore not disabled (R. 20).

## *STANDARDS OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.2004). We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner. 357 F.3d at 1240 n. 8 (internal quotation and citation omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## *ISSUES AND ANALYSIS*

Plaintiff urges reversal, contending that the ALJ's determination that Plaintiff could return to past work was not supported by substantial evidence; that the ALJ failed to evaluate Plaintiff's migraines; and that the ALJ did not properly evaluate Plaintiff's complaints of pain. The Court treats each, in turn.

*Past Work*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. § § 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Here, the ALJ determined this case at step four of the evaluation; finding that Plaintiff's impairments did not prevent her from doing her past relevant work as a revenue specialist/tax clerk.

Plaintiff asserts that the ALJ's determination is not supported by substantial evidence in that Plaintiff's carpal tunnel syndrome precluded her from frequent handling and fingering, and the determination is otherwise inconsistent with the opinion of Plaintiff's treating physician – Dr. Benezette. With respect to the carpal tunnel diagnosis, as set forth by the ALJ in the decision, Plaintiff has not received any treatment for this condition– save for splints to wear only at night (R. 18, 560). There is no evidence of work related limitations due to this condition, and, indeed, the VE testified that Plaintiff's current job as a library assistant required the same abilities to frequently reach, finger and handle objects as the tax clerk position (R. 576-77). There is no evidence that Plaintiff could not perform her job as a library assistant, and, as noted, Plaintiff had missed only two days of work in six

months. Thus, substantial evidence supports the ALJ's conclusion that Plaintiff's carpal tunnel syndrome was not a severe and limiting impairment.

As for the opinion of Dr. Benezette, as stated above, in November 2004, the physician restricted Plaintiff to very sedentary activities, and opined that Plaintiff was restricted to lifting only five pounds occasionally, and should not stoop, bend, reach, push, crawl or climb. The ALJ noted, but did not adopt, this opinion in formulating Plaintiff's residual functional capacity. At issue is the weight that must be afforded the opinion of a treating physician.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the

treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ credited some of Dr. Benezette's restrictions, finding that Plaintiff was limited in lifting and prolonged standing and walking, and some postural activities. The ALJ discounted the extent of the greater restrictions present in the November 2004 opinion, however, finding that the opinion was based on Plaintiff's condition following her June 2004 accident, and thus presented a condition that was not present for at least 12 months, as required. Further, the ALJ felt that these restrictions were inconsistent with the physician's earlier assessment and the current 4% impairment rating (R. 19). The Court finds that substantial evidence supports this finding.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

As noted by the ALJ, these restrictions were more severe than those earlier found by this physician, and were attributable to a June 2004 accident. The decision was rendered in December 2004; thus, as of the date of the decision, Plaintiff was not disabled by the June accident for a

continuous period of at least 12 months. Moreover, as noted by the ALJ, Plaintiff was performing work in excess of these restrictions, up to the date of the hearing. Thus, Plaintiff had not met her burden of showing that the condition was "expected to last" for 12 months. The ALJ's conclusion that the more severe restrictions did not meet the 12 month requirement is properly supported.[3]

### Headaches

Plaintiff next contends that the ALJ erred in failing to include Plaintiff's migraines in assessing her residual functional capacity, citing 20 C.F.R. § 416.945(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). The ALJ, however, did consider Plaintiff's headaches, but found that they were not vocationally limiting. As stated by the ALJ:

> [T]he claimant has been treated for migraine headaches for years. It is not disputed that she experiences migraines; however, she has successfully worked with this problem in the past and there is no evidence that they have increased in severity over time.

(R. 19). This finding is supported by substantial evidence. As noted by the Commissioner, MRI's of Plaintiff's brain were normal, and Plaintiff has responded to medication for her migraines. Moreover, Plaintiff has missed only two days of work in six months, and her reported activities of daily living include driving, shopping, working, caring for her children and household – all activities which indicate that Plaintiff's limitations from her migraines are not inconsistent with the residual functional capacity assigned. The Court finds no error.

### Pain

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and

---

[3]Moreover, the Court agrees that the severe restrictions noted by Dr. Benezette are, indeed, inconsistent with a 4% impairment rating.

determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, Plaintiff testified as to her pain and limitations, specifically noting that her condition would prevent her from working a full eight hour day. The ALJ did not explicitly discredit that testimony, save for a conclusion that Plaintiff's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision (R. 21). The rationale is implicit,

-15-

however, in the text of the determination, as the ALJ discredited Plaintiff's claim of limitations 1) due to her pain (R. 18) (citing Dr. Oately's assessment that Plaintiff's conditions "did not limit her in activities of daily living, social functioning, or concentration" and noting that in July 2004, Plaintiff "was still having neck and back pain; however, she did not want to stop working at the library"); 2) due to her depression ("claimant testified that she has been depressed for 5 years, and she was employed during much of that time") (R. 18); 3) due to her carpal tunnel ("no evidence of significant limitations of work related activities due to this diagnosis") (R. 19); 4) due to her migraines ("she has successfully worked with this problem in the past and there is no evidence that they have increased in severity over time") (R. 19); and, 5) due to her energy level, in general (noting that Plaintiff's present job is "clearly indicative of her activity level.") (R. 15-6).  These findings are supported by substantial evidence, and must therefore be affirmed.

Plaintiff has met prong one of the pain standard, however, the record supports the ALJ's decision that she had not met either prong two or three.  While her diabetes and back pain clearly result in limitations, Plaintiff's level of activity is inconsistent with her testimony of disabling limitations.  Based upon the deferential standard of review, the decision of the Commissioner is adequately supported.

## *CONCLUSION*

The determination of the Commissioner is supported by substantial evidence and was made in accordance with the proper standards of law.  As such, it is **AFFIRMED.**  The Clerk is directed to enter judgment accordingly, terminate all pending matters, and close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 6, 2006.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

-17-

Copies furnished to:

Counsel of Record